NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 7

No. 25-AP-061

In re Trust of Marsha Milot                     Supreme Court
(Jennifer Milot, Appellant)

                                                On Appeal from
                                                Superior Court, Chittenden Unit,
                                                Probate Division

                                                October Term, 2025

Gregory Glennon, J.

Andre D. Bouffard of Downs Rachlin Martin PLLC, Burlington, for Petitioner-Appellant.

Matthew A. Zidovsky of Langrock Sperry & Wool, LLP, Burlington, for Respondent-Appellee
  Trust of Marsha Milot, Valerie Wiederhorn and Curtis Hennigar, as Co-Trustees.


PRESENT:  Reiber, C.J., Eaton, Cohen and Waples, JJ., and Corbett, Supr. J.,
          Specially Assigned


¶ 1.    **REIBER, C.J.**  Petitioner Jennifer Milot appeals the denial of her petition to open a trust action to obtain information about the administration and assets of a revocable trust whose settlor, Marsha Milot, is still alive. Petitioner claims the probate division erred by: failing to apply the correct legal standard when deciding to dismiss petitioner's action; failing to consider whether petitioner's information requests were "unreasonable under the circumstances" as required by statute; and concluding that under 14A V.S.A. § 603, co-trustees Valerie Wiederhorn and Curtis Hennigar owed no duty to provide information regarding the trust and co-trustees' administration to petitioner. We conclude that while the trust remains revocable, petitioner is not entitled to the

information she seeks under § 813 of the Vermont Trust Code.[1]  However, we hold that the probate division erred by failing to consider petitioner's request to amend her complaint to seek removal of co-trustee Wiederhorn, and therefore reverse and remand for it to do so.

## I.  Background

¶ 2.     The record reflects the following.  In 2009, settlor Marsha Milot created a revocable trust naming herself as trustee and lifelong beneficiary.  The trust named settlor's daughter, Valerie Wiederhorn, and settlor's three stepdaughters from a former marriage, including petitioner, as equal beneficiaries of the trust after settlor's death.[2]  In 2018, Wiederhorn became a co-trustee with settlor.  In July 2021, settlor stepped down from her role as co-trustee and settlor's husband, Curtis Hennigar, became co-trustee with Wiederhorn.

¶ 3.     In April 2024, petitioner filed a petition in the probate division seeking a copy of the trust instrument.  Petitioner asserted that as a beneficiary of the trust, she was entitled to receive a copy of the trust along with any amendments under 14A V.S.A. § 813(b)(1).  According to petitioner, co-trustees had improperly denied her request for a copy because they contended that she was not a "qualified beneficiary" under 14A V.S.A. § 813(a).  By letter to the probate judge dated July 2, 2024, co-trustees answered in which they agreed that "[p]etitioner's claim has merit," but asked the court to hold an evidentiary hearing, make findings, and rule on the merits.

¶ 4.     In July 2024, the court ordered co-trustees to file a copy of the trust, along with any amendments, in camera so the filings would not be public.[3]  After reviewing the trust documents, the court determined petitioner was entitled to a copy of the trust under § 813(b)(1) and unsealed

---

[1]  Section 101 of Title 14A states that Title 14A may be cited as "the Vermont Trust Code." See 14A V.S.A. § 101 et seq.  We will continue to cite it as such unless a specific reference within the body of the Vermont Trust Code is warranted.

[2]  Petitioner's sisters sought to intervene in the probate proceeding, but the probate division denied petitioner's petition without reaching the sisters' respective motions.

[3]  In Camera, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/in%20camera [https://perma.cc/7XV3-N3JM] (defining "in camera" as "in private" and "in a judge's chambers").

the in-camera filing. Because the only relief petitioner requested was a copy of the trust, the court asked the parties to submit briefing on whether the petition had been rendered moot by the court's order unsealing the trust document and its amendments. The court denied co-trustees' request for an evidentiary hearing.

¶ 5. Petitioner claimed that opening a trust action was still necessary because after receiving a copy of the trust, she had requested additional information to which she was entitled by law that co-trustees had not yet provided to her. Petitioner alleged that settlor had become incapacitated, making the trust irrevocable, and that petitioner had become a "qualified beneficiary" within the meaning of the Vermont Trust Code, 14A V.S.A. § 103(13)(A), such that she was entitled to information about the administration of the trust. She further asserted that she was being treated differently by the trustees than the other beneficiaries. Petitioner sought a copy of the letter from settlor's doctor regarding her incapacity and a copy of the document by which co-trustee Hennigar accepted his responsibilities as successor trustee. Co-trustees responded that the matter was moot because the narrow relief requested in the petition had been granted. Co-trustees further asserted that they had provided a report to petitioner of the trust property pursuant to 14A V.S.A. § 813(c). They asserted that as a non-income beneficiary of the trust, petitioner had received all the information she was entitled to, whether or not she was a qualified beneficiary. Co-trustees asked the court to dismiss the petition with prejudice.

¶ 6. Petitioner replied that the report she received did not account for trust property between 2009, when the trust was formed, and 2021; falsely stated that the sole trust asset was an investment account, when petitioner was aware of at least one other checking account; and did not explain what happened to the proceeds of the sale of a commercial building that appeared to have been a trust asset. Petitioner asked the court to compel co-trustees to provide the information she requested and indicated that if the court required, she would amend her petition to request a determination that she had become a qualified beneficiary and to request further discovery from

3

co-trustees. Co-trustees responded that petitioner was not legally entitled to the letter from settlor's doctor, co-trustee Hennigar's trustee document, or an accounting of the entire life of the trust; the checking account to which petitioner referred was not a trust asset; and explained that the proceeds of the commercial building had been placed in the trust. They opposed petitioner's request to amend her petition.

¶ 7. In September 2024, the court issued another order noting that the substantive relief petitioner requested was "satisfied, more or less." However, it determined that dismissal with prejudice was not appropriate based on the allegations in petitioner's pleadings. The court suggested that 14A V.S.A. § 603, which provides that while a trust is revocable, the rights of beneficiaries are subject to the control of the settlor, barred the relief sought by petitioner, but stated it would allow the trust action to proceed if there were "credible facts and serious allegations" that warranted the court's exercise of its equitable powers. See 14A V.S.A. § 205 (providing probate division "may hear and determine in equity all matters relating to trusts in this title").

¶ 8. Petitioner filed a lengthy response alleging that co-trustee Wiederhorn had invaded the trust principal, given herself a loan of over $ 1 million from the trust assets, and in retaliation for petitioner's requests for information about the trust pursued a collection action against petitioner for promissory notes that the trust specified were to be forgiven upon settlor's death. Petitioner asserted that co-trustee Wiederhorn had acted without consulting co-trustee Hennigar. Petitioner asked the probate division to retain jurisdiction pursuant to its powers of equity and regulation and to allow petitioner to conduct discovery to determine whether co-trustee Wiederhorn should be removed. In response, co-trustees stated that the distributions from trust assets were for settlor, who remained in control of the trust, and whose medical expenses had tripled. They acknowledged that co-trustee Wiederhorn had borrowed from the trust but asserted that she had repaid the loan.

4

¶ 9. In November 2024, the court issued an order summarizing petitioner's allegations and co-trustees' responses. The court sought clarification and support for co-trustees' assertion that settlor's lifestyle costs were "on the rise." The court noted that the increased cost was "unusual" because such costs typically decrease when someone is incapacitated and reaches advanced age. Accordingly, it asked the trust to provide further information on this issue.

¶ 10. In response, co-trustees asserted that settlor had dementia and that her medical expenses had increased significantly due to the need for caregivers. They asserted that settlor and co-trustee Hennigar continued to travel, go out to restaurants, and make gifts to family and pay education expenses for family members. They listed settlor's yearly expenses on an annualized basis without detail. Petitioner responded that co-trustees had failed to provide proof of these expenses or the trust's income in the form of supporting documentation and data.

¶ 11. In January 2025, the court issued an order denying the petition to open a trust proceeding. The court stated that co-trustees' response to its November 2024 order addressed the court's concerns around spending of trust principal to support settlor's lifestyle and medical needs. It therefore declined to invoke its equity jurisdiction to "override the statutory application" of § 603 and concluded that co-trustees presently owed no duties to the trust's remainder beneficiaries. Petitioner appeals.

## II. Analysis

¶ 12. We first address the question of jurisdiction. This Court has jurisdiction over appeals from probate proceedings that involve questions of law. 12 V.S.A. § 2551 ("The Supreme Court shall have jurisdiction of questions of law arising in the course of the proceedings of the Superior Courts in probate matters, as in other causes."). Our review is limited to pure questions of law that do not require factual distinctions gained from a review of the record. In re Est. of Johnson, 158 Vt. 557, 559, 613 A.2d 703, 704 (1992). If a factual distinction could resolve an issue, we will not review the issue. Id. (noting such issues are inappropriate for our review). Here,

5

petitioner challenges the legal standard the court applied in dismissing the petition, and argues that the court erred in concluding that 14A V.S.A. § 603 barred petitioner from seeking additional information under 14A V.S.A. § 813. These are both questions of law, which we have jurisdiction to review. See, e.g., In re Peter Val Preda Trs., 2019 VT 61, ¶ 7, 210 Vt. 607, 218 A.3d 27 (stating this Court had jurisdiction to review probate division's decision to dismiss petition for trustee removal because its decision solely concerned questions of law).

¶ 13. We therefore turn to petitioner's arguments on appeal. Petitioner argues that the probate division improperly focused on whether co-trustees had satisfied the court's concerns about spending trust principal, rather than considering whether petitioner had alleged facts and circumstances that could justify relief under the Vermont Trust Code. Petitioner argues that the court was required to accept petitioner's allegations and reasonable inferences as true, and assume respondent's contravening allegations to be false. Petitioner argues that, taken as true, the facts alleged in her various filings show that she is entitled to discovery under § 813 of the Vermont Trust Code.

¶ 14. Addressing petitioner's arguments requires us to interpret various provisions of the Vermont Trust Code. In interpreting the Vermont Trust Code, we are guided by the familiar rules of statutory interpretation and aim to give effect to the Legislature's intent. Flint v. Dep't of Lab., 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080 ("In interpreting a statute, our primary aim is always to determine the intent of the Legislature and implement that intent."). We look to the statute's plain meaning to ascertain the Legislature's intent. Id. If the Legislature's intent is evident from the statute's clear and unambiguous plain language, we will "implement the statute according to that plain language." Id. We employ other tools of statutory construction "only if the plain language of the statute is unclear or ambiguous." Id.

¶ 15. Section 813 of the Vermont Trust Code delineates a trustee's duty to keep beneficiaries informed about the administration of a trust. 14A V.S.A. § 813. A trustee is not

6

required under § 813 to inform beneficiaries about every aspect of a trust's administration.  See Est. of Alden v. Dee, 2011 VT 64, ¶ 37, 190 Vt. 401, 35 A.3d 950 ("A trustee's duty to disclose . . . does not require the trustee to inform the beneficiaries of every aspect of administration of the trust . . . .").  Instead, § 813 entitles beneficiaries to different information depending on their status.  A trustee must keep "qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary . . . to protect their interests."  14A V.S.A. § 813(a); see also 14A V.S.A. § 103(13)(A)(iii) (defining "qualified beneficiary" and noting qualified beneficiary includes "final beneficiar[ies]," meaning those who would be distributees if trust terminated).  Section 813(a) also requires a trustee to "promptly respond to a beneficiary's request for information" related to trust administration unless doing so would be "unreasonable under the circumstances."  14A V.S.A. § 813(a).  The Official Comment to § 813(a) clarifies that these duties are limited to qualified beneficiaries.  Section 813(b)(1) requires a trustee to "promptly furnish" a copy of a trust instrument to any beneficiary, qualified or otherwise, upon the beneficiary's request.  14A V.S.A. § 813(b)(1).  The next subsection, § 813(c), requires a trustee to send an annual report of "trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, their respective market values" to distributees of trust income or principal and "to other beneficiaries who request it."  Id. § 813(c).

¶ 16.  However, § 813 is limited by § 603, which provides that "[w]hile a trust is revocable, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor."  Id. § 603(a).  In other words, "while a trust is revocable, all rights that the beneficiaries would otherwise possess are subject to the settlor's control."  In re Stephen M. Gunther Revocable Living Tr., 350 S.W.3d 44, 46 (Mo. Ct. App. 2011) (holding, under Missouri's version of Uniform Trust Code, that because trustee of revocable trust owed no duty to beneficiaries prior to settlor's death, they were not entitled to accounting of trust transactions prior

7

to that date); see also In re Tr. No. T-1 of Trimble, 826 N.W.2d 474, 489 (Iowa 2013) (holding same under Iowa's version of Uniform Trust Code).

¶ 17. Petitioner argues that a settlor must have testamentary capacity to revoke or amend a revocable trust, and alleges that settlor has been incapacitated since 2021. See 14A V.S.A. § 601 (requiring settlor's capacity to "create, amend, revoke, or add property to a revocable trust" as same capacity required to make will). Thus, petitioner argues, the trust has effectively become irrevocable for purposes of § 603.

¶ 18. However, the comments to the Vermont Trust Code make clear that a settlor's incapacity does not make the trust irrevocable or trigger the beneficiary's right to information. "The fact that the settlor becomes incapacitated does not convert a revocable trust into an irrevocable trust. The trust remains revocable until the settlor's death or the power of revocation is released." Official Comment, 14A V.S.A. § 103. Further, the Vermont Comment to § 603 explains that our Legislature deliberately opted not to make the settlor's rights and powers dependent on capacity:

> The Uniform Trust Code optional language of "and the settlor has capacity to revoke the trust" after "While a trust is revocable" was not adopted into the Vermont Trust Code. This is consistent with the concept that the subsequent mental incapacity of the settlor will not affect the settlor's rights and powers. The settlor's retained rights and powers may be exercised by an agent.

The 2004 Official Comment to § 603 explains that the drafters of the Uniform Trust Code made the capacity language optional because it can be difficult to determine when a settlor has become incapacitated and because it treats trusts differently than wills, when many felt the rules for both should be the same: "In the case of a will, the devisees have no right to know of the dispositions made in their favor until the testator's death, whether or not the testator is incapacitated. Under Section 603, however, the remainder beneficiary's right to know commences on the settlor's incapacity." For these reasons, in 2004 the Uniform Trust Code was amended to make the capacity

8

language optional. "Since 2004, at least twenty-five states have rejected beneficiary standing during the settlor's incapacity, including some that had previously allowed such standing." D. Feder & R. Sitkoff, Revocable Trusts and Incapacity Planning: More Than Just A Will Substitute, 24 Elder L.J. 1, 37 (2016) (explaining history of provision).

¶ 19.  The comments to the Vermont Trust Code are a strong indication of the Legislature's intent.  Cf. Bissonnette v. Wylie, 162 Vt. 598, 602, 654 A.2d 333, 336 (1994) (explaining that this Court regards comments to Uniform Commercial Code (UCC) "as a strong indication of the Legislature's intent in adopting a particular UCC provision"); see Springfield Tchrs. Ass'n v. Springfield Sch. Dirs., 167 Vt. 180, 188 n.3, 705 A.2d 541, 546 n.3 (1997) ("Ordinarily, when the Legislature models a statute after a uniform act, but does not adopt particular language, we conclude that the omission was intentional such that the policy of the uniform act was rejected.").  They support the conclusion that a trustee's duty to provide information under § 813 is owed solely to the settlor until the trust becomes irrevocable.  See F. Foster, Privacy and the Elusive Quest for Uniformity in the Law of Trusts, 38 Ariz. St. L.J. 713, 753-54 (2006) ("If the living settlor of a revocable trust becomes incapacitated, do beneficiaries have rights to information about the trust, including access to the trust instrument? . . . In [states that opted not to include optional language of § 603], . . . the answer is an unequivocal 'no.' ").  The probate division therefore properly dismissed the petition to the extent that it was based on petitioner's alleged right to information under § 813.[4]

¶ 20.  That does not end our inquiry, however.  In her responses to the probate division's orders, petitioner added a new request for relief, which was to investigate whether co-trustee Wiederhorn should be removed under 14A V.S.A. § 706.  Section 706 provides that "[t]he settlor,

---

[4]  The cases cited by petitioner are distinguishable because they do not involve revocable trusts.  See, e.g., Tr. Created Under the Will of Damon, 398 P.3d 645 (Haw. 2017); Snell v. Snell, 2016 WY 49, ¶ 5, 374 P.3d 1236; Jacob v. Davis, 738 A.2d 904 (Md. Ct. Spec. App. 1999).

a cotrustee, or a beneficiary" may seek to have a trustee removed or replaced for "a serious breach of trust," a "lack of cooperation among cotrustees," or other enumerated reasons. 14A V.S.A. § 706(a), (b). Section 706 contains no limitations on the type of trust to which it applies. Unlike the trustee's duty to provide information, there is no indication in the statute or comments that a beneficiary cannot seek removal of a trustee until the trust becomes irrevocable. Rather, the Official Comment to § 706 states: "The right of a beneficiary to petition for removal does not apply to a revocable trust while the settlor has capacity. Pursuant to subsection 603(a), while a trust is revocable and the settlor has capacity, the rights of the beneficiaries are subject to the settlor's exclusive control." Official Comment, 14A V.S.A. § 706 (emphasis added). This language, which the Legislature did not alter from its original form when enacting the Vermont Trust Code, indicates that if a settlor is incapacitated, a beneficiary has the right to petition for trustee removal under § 706. See In re Conservatorship of Abbott, 890 N.W.2d 469, 480 (Neb. 2017) (holding that beneficiaries had standing under Nebraska's version of § 706 to seek removal of trustee of revocable trust whose settlor was alive but incapacitated).

¶ 21. Here, petitioner alleged that co-trustee Wiederhorn was acting without the consent of co-trustee Hennigar and had given herself a large loan from the trust.[5] Petitioner further alleged that the report the trust provided contained inaccurate trust principal and expense amounts. Petitioner asked for permission to amend her complaint to seek removal of co-trustee Wiederhorn under § 706. The probate division dismissed the petition without addressing petitioner's request, effectively denying it.

¶ 22. Vermont Rule of Probate Procedure 15(a) provides that leave to amend a petition "shall be freely given when justice so requires." Both Rule 15 and Vermont's common-law tradition "encourage liberality in allowing amendments to pleadings" when doing so will not

---

[5] Co-trustees acknowledged that the loan had occurred, though they denied that it constituted a basis for further proceedings.

prejudice the other party. <u>Bevins v. King</u>, 143 Vt. 252, 254, 465 A.2d 282, 283 (1983). While the trial court may deny an amendment if it would prejudice another party or is frivolous or made in bad faith, the court did not consider those factors here. Instead, it simply did not address the request, which was an abuse of discretion. See <u>PeakCM, LLC v. Mountainview Metal Sys., LLC</u>, 2025 VT 50, ¶ 18, __ Vt. __ , 346 A.3d 444 (explaining that failure to exercise discretion is abuse of discretion). Remand is therefore necessary for the court to consider petitioner's request to amend her petition. Because we hold that the probate division erred in failing to address petitioner's request and reverse and remand on that basis, we do not reach petitioner's subsequent arguments.

¶ 23. In sum, we hold that petitioner was not entitled to receive trust information under § 813 because the trust remains revocable while settlor is alive. However, we reverse and remand the dismissal order for the probate division to consider petitioner's request to amend her petition. In so holding, we take no position on whether settlor is in fact incapacitated, whether petitioner is a qualified beneficiary, or any other factual questions raised by this appeal. Those matters are for the probate division to resolve in the context of any further proceedings that occur on remand.

<u>Reversed and remanded for the probate division to address petitioner's request to amend her petition to seek removal of co-trustee(s)</u>.

FOR THE COURT:

_____
Chief Justice